IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| WILLIAM KERR, | ) |
| | ) |
| | ) 2:24-CV-01201-MJH |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FRANK J. BISIGNANO[1], | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION; | |
| | |
| Defendant, | |

OPINION

Pending before the court is an appeal from the final decision of the Commissioner of Social Security denying the claim of William Kerr for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g). Mr. Kerr contends the Administrative Law Judge (the "ALJ") erred by failing to adequately evaluate the medical opinion of his orthopedic surgeon, Dr. Altman.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The matter is now ripe for decision. Following consideration of the respective motions and briefs (ECF Nos. 6, 7, 10, and 13), and for the following reasons, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted.

**I.    Relevant Law and Background**

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

A. Social Security Disability Eligibility

To be eligible for Social Security benefits under the SSA, a claimant must demonstrate that he or she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

1. whether the claimant is currently engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

3. whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1;

4. whether the claimant's impairments prevent him from performing his past relevant work; and

5. if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

B. Background

In applying for Social Security Disability, Mr. Kerr asserted that he had stopped working because of work injury where he fell backwards attempting to open a valve on a production tank using a wrench, dislocating his foot and fracturing his tibia and fibula as a result. (ECF No. 4-2 at 78-79). On December 30, 2021, Plaintiff presented to the emergency department with complaints of right ankle pain and inability to ambulate after falling at work. (ECF No. 4-7 at p. 57). Mr. Kerr was diagnosed with fractures of the right distal fibula and tibia and underwent splint placement to the right ankle. *Id.* at pp. 59-60.

On January 3, 2022, Mr. Kerr underwent right leg external fixation application and right fibula fracture closed reduction with manipulation. *Id*. at ¶ 65. On January 6, 2022, he underwent open reduction internal fixation (ORIF) of the right distal fibula fracture and right distal tibiofibular joint and adjustment of the right ankle external fixator. (ECF No. 4-8 at ¶ 215). Dr. Alman performed both procedures. *Id*.

C. ALJ's Decision

Following a hearing on Mr. Kerr's application for a period of disability and disability insurance benefits, the ALJ made the following findings under the five-step sequential analysis:

\*\*\*

2. The claimant has not engaged in substantial gainful activity since December 30, 2021, the alleged onset date (20 CFR 404.1571 et seq.) **[STEP 1]**.

3. The claimant has the following severe impairments: displaced fractures of the right tibia and fibula (20 CFR 404.1520(c)). **[STEP 2].**

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). **[STEP 3]**.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except:

    • He can stand and walk for up to four hours during an eight-hour workday;

    • He must be able to sit for 5 minutes after every 25 minutes of standing and walking;

    • He must be able to stand for 5 minutes after every 25 minutes of sitting;

    • He can remain on task during changes of position;

    • He can occasionally operate foot controls with the right foot;

    • He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds;

    • He can occasionally balance, stoop, kneel, crouch, and crawl;

    • He cannot work at unprotected heights or around moving mechanical parts;

    • He can occasionally operate a motor vehicle; and

    • He would be off task 10% of the workday. **[RFC]**

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). **[Step 4]**

7. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). **[Step 5]**.

8. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2021, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 4-2 at pp. 61-67).

In reaching his findings on Mr. Kerr's residual functional capacity, the ALJ considered, among other aspects of the record, the opinions of Dr. Altman, Mr. Kerr's treating orthopedic

surgeon.  In November 16, 2023, Dr. Altman submitted a check-box "Medical Source Statement of Ability to Do Work-Related Activities."  In said Statement, Dr. Altman listed diagnoses of right ankle fracture and right foot numbness and assessed a fair prognosis. (ECF No. 4-9 at p. 181). Dr. Altman opined that Mr. Kerr could occasionally lift/carry less than 10 pounds, sit 6 or more hours, and stand/walk 1 hour total in an 8-hour workday. *Id*.  Dr. Altman also opined that Mr. Kerr could occasionally push/pull with the upper and lower extremities, occasionally perform fine and gross manipulation, and occasionally maintain focus and attention to perform even simple tasks during a typical workday. *Id.*  He also stated that Mr. Kerr would require occasional walking breaks. *Id*. Dr. Altman advised that Mr. Kerr was limited to no more than sedentary work after reaching maximal medical improvement. *Id*.

The ALJ found Dr. Altman minimally persuasive. (ECF No. 4-2 at p. 65).  In particular, the ALJ noted that Dr. Altman's opinion that Mr. Kerr "would be limited to less than the full range of sedentary work, while noting that he would require occasional breaks during the day and would have occasional lapses in focus and concentration secondary to pain" was "consistent with the doctor's earlier observations that the claimant would be unable to ambulate for significant periods of time and that he had reached maximum medical improvement." *Id*. However, the ALJ found that Dr. Altman overstated the severity of Mr. Kerr's exertional limitations because it was not supported by longitudinal treatment records that Mr. Kerr responded well to treatment.  *Id*.

### D.  Dr. Altman's Treatment Records

Following surgery, Dr. Altman advised Mr. Kerr to remain off work for two months due to the nature of his "manual labor job." (ECF No. 4-7 a pp. 61, 81, 83, 87).  In the following six months, Dr. Altman noted that Mr. Kerr experienced "no[ne]" to only "mild" pain with no

tenderness, was progressing "quite well" and "very nicely" (e.g., he had no alignment abnormality and intact hardware), and was experiencing only "some" mild/slight swelling. *Id*. Dr. Altman further observed that Complaints of swelling that was "worsening" while initially weight-bearing was related to Kerr "not wearing compression garments" that were reportedly quickly effective after obtained and worn. *Id*. at pp. 87, 92, 138, 150.

Dr. Altman noted that, six-months post-surgeries, Mr. Kerr was scheduled to return to work; however, after driving to and from Myrtle Beach for a week-long vacation, Mr. Kerr informed Dr. Altman that because his job was "heavy duty," he preferred to focus on additional physical therapy. *Id.* at 96, 158, and 160. Dr. Altman granted Mr. Kerr a prescription for three additional months of physical therapy while remaining off work. *Id*. at p. 96. Treatment notes from his extended physical therapy sessions revealed that was able to keep up with, his son's college tour that required a lot of walking around the campus; he was also able to cut his lawn with no issues; and he displayed excellent strength with good tolerance to treatment. *Id*. at pp. 14, 19, 27, 28, and 42. When Mr. Kerr later suddenly demonstrated an onset of an antalgic gait pattern during his session, the therapist advised wearing higher top shoe/boot for outdoor activity and/or securing an ankle brace for prolonged standing and walking. *Id*. at p. 12, 16. In early 2023, Dr. Altman noted that Kerr's edema was "well-controlled," no longer necessitating custom garments. *Id*. at pp. 51, 56. Mr. Kerr's pain level remained low, his calf nontender, and his sensory functioning intact. *Id*. at p. 50.

II.     Standard of Review

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g). The judicial review of a final decision is plenary with respect to questions of law. *Schaudeck v. Comm'r Soc. Sec.*, 181 F.3d 429, 431 (3d

Cir. 1999). With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." *Burns v. Burhart*, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. *Id*.; *Fargnoli v. Massonari*, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry). The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196-7 (1947).

III.   Discussion

Mr. Kerr contends ALJ failed to adequately weigh the favorable medical opinion from Dr. Altman that limited Mr. Kerr his residual functional capacity to sedentary work.   Mr. Kerr argues that, the ALJ made conclusory findings, that Dr. Altman's opinion was not persuasive, without a sufficient level of articulation to justify affirming the ALJ's determination.   Mr. Kerr also maintains that the ALJ's findings, as regards Dr. Altman, were not supported by substantial evidence.

The Commissioner contends that the ALJ correctly applied the relevant regulations and and substantial evidence supported the ALJ's determination of Mr. Kerr's RFC.   The

Commissioner further argues that Mr. Kerr has not offered any convincing evidence of record that he has less than sedentary capacity for work-related activities.

Under the revised regulations set forth in 20 C.F.R. § 404.1520c, which are applicable in this case, the ALJ is required to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of the treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical findings. 20 C.F.R. § 404.1520c(c). While an ALJ is required to consider all five factors used to determine the persuasiveness of a medical opinion, he or she must only explicitly explain his findings for the two most important factors: consistency and supportability. *Id*. at 404.1520c(b)(2).

Here, the ALJ's decision, that Dr. Altman's November 2023 Statement minimally persuasive, is substantially supported by the longitudinal record.  In the first instance, Dr. Altman's November 2023 Statement is check-box form without supporting reasoning and thus, it is not entitled any significant persuasive weight. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (stating "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").  The ALJ reasonably explained that Dr. Altman's check-box restrictions overstated the severity of Mr. Kerr's limitations, and said restrictions were inconsistent with Dr. Altman's treatment notes. Specifically, the ALJ found that the fully longitudinal record did not support the finding of anything less than the ability to perform light work.  In reaching this decision, the ALJ noted as follows:

> Follow-up treatment records indicate that the claimant made good progress and did well after surgery (Ex. 2F at 50, 56). In February of 2023, Dr. Altman noted

8

that he had made "significant improvement" after surgery (Ex. 7F at 24). The claimant also reported that the swelling in his ankle improved after he started wearing compression stockings (Ex. 5F at 7). Moreover, he reported that physical therapy improved his pain, functionality, and range of motion (Ex. 6F at 3). The most recent treatment records from the physical medicine specialist noted that the claimant exhibited full strength and walked with a non-antalgic gait, while being referred to an at-home exercise plan (Ex. 8F at 4). Additionally, electrodiagnostic testing was also unremarkable (Ex. 8F at 7). Treatment records also show that the claimant was able to travel to Myrtle Beach in July of 2023 with no apparent issues (Ex. 12F at 12). Therefore, after a review of the full longitudinal record, the undersigned finds that the objective medical evidence of record supports the residual functional capacity that has been set forth above. Moreover, the residual functional capacity includes 10% off-task time to account for claimant's slower movement as a result of his lower extremity impairment.

(ECF No. 4-2 at pp. 65-66).  These findings are also consistent with state agency consultant Kelsey Kaifer, N.P., who noted that while Mr. Kerr had some limitations, his objective exam demonstrated a "mostly normal" gait with full strength in his lower extremities. (ECF No. 4-9 at p. 77-78).  Nurse Kaifer also addressed Mr. Kerr's residual functional capacity in light of his diminished sensation and his description of his daily activities. *Id.*   In light of the overall longitudinal record of Mr. Kerr's injury and treatment record, Dr. Altman's check-box assessment of Mr. Kerr is neither supported or consistent by Dr. Altman's treatment notes and the objective findings of other medical consultants.  Therefore, the ALJ reasonably considered Dr. Altman's Statement as minimally persuasive and substantial evidence in the record was present to support that Mr. Kerr retained a light duty residual functional capacity.

    IV.    Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.   The within appeal is dismissed, and the Clerk will mark the case closed.

DATED this 10th day of September, 2025.

BY THE COURT:

9

_____
MARILYN J. HORAN
United States District Judge